UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JARRETT PATTON,                              )
                                             )
              Plaintiff,                      )
                                             )           CIVIL ACTION NO.
VS.                                          )
                                             )           3:21-CV-1409-G
MERIDIAN SECURITY INSURANCE                  )
COMPANY,                                     )
                                             )
              Defendant.                      )

MEMORANDUM OPINION AND ORDER

Before the court is the motion for partial summary judgment filed by the

defendant Meridian Security Insurance Company ("Meridian").  For the reasons

stated below, the defendant's motion is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

This is an insurance coverage dispute arising out of a claim for property

damage from freezing temperatures on or around February 15, 2021.  Defendant

Meridian Security Insurance Company's Brief in Support of Its Motion for Partial

Summary Judgment ("Brief in Support of Motion") (docket entry 21) at 6.  The

plaintiff, Jarrett Patton ("Patton"), contends that Meridian wrongfully denied or

underpaid his claim and filed this suit alleging that Meridian committed breach of

contract, violations of sections 541 and 542 of the Texas Insurance Code, breach of

the common law duty of good faith and fair dealing, and breach of express or implied

warranty. *Id.* On March 25, 2022, Meridian filed Defendant Meridian Security

Insurance Company's Motion for Partial Summary Judgment ("Motion") (docket

entry 20). Meridian moves for partial summary judgment as to all extra-contractual

claims, including the Texas Insurance Code claims, the breach of common law duty of

good faith and fair dealing claim, and the breach of express or implied warranty

claim. Motion at 1. Patton filed Plaintiff's Response to Defendant's Motion for

Partial Summary Judgment ("Response") (docket entry 25) on April 15, 2022, and

Meridian filed Defendant Meridian Security Insurance Company's Reply to Its

Motion for Partial Summary Judgment ("Reply") (docket entry 30) on April 28,

2022.

Meridian issued a Homeowner's Policy (the "Policy"), number 1000441896 to

Patton, effective March 7, 2020, to March 7, 2021. Brief in Support of Motion at 6-

7; *see generally* Exhibit A to First Amended Answer (docket entry 13-2). The Policy

covers certain direct physical loss or damage to Patton's property, located at 5227

Monticello Ave, Dallas, Texas 75206-6035 (the "Property"), that occurs within the

policy period, including that which is caused by "[f]reezing of a plumbing, heating, air

conditioning or automatic fire protective sprinkler system . . . [,]" as long as the

- 2 -

insured used reasonable care to "[m]aintain heat in the building" or "[s]hut off the water supply and drain all systems and appliances of water."  Appendix to Brief in Support of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment ("Appendix to Response") (docket entry 27) at APP 0054.  The Policy also covers "[a]dditional living expense[s]" resulting from loss of use of the Property resulting from a covered loss.  *Id.* at APP 0050.  This Policy provision states in relevant part:

> If a loss covered under Section I makes that part of the 'residence premises' where you reside not fit to live in, [Meridian] cover[s] any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
>
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

*Id.*

The Policy is a replacement cost policy with the following relevant coverage limits: $606,900 for "Dwelling" with a $2,711.63 premium; $60,690 for "Other Structures" with premium included; $424,830 for "Personal Property" with premium included; and $182,070 for "Loss of Use" with premium included.  *Id.* at APP 0003.  Patton's deductible under the Policy is $6,069.  *Id.* at APP 0004.

Patton's claim arose on or about February 17, 2021, when the Property was purportedly "damaged as a result of numerous plumbing leaks during state-wide

- 3 -

freezing temperatures" and Meridian was subsequently notified of the claim. Brief in Support of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment ("Brief in Support of Response") (docket entry 26) at 6; Appendix in Support of Defendant Meridian Security Insurance Company's Motion for Partial Summary Judgment ("Appendix to Motion") (docket entry 22) at Appendix 000199. Brian Heath ("Heath"), Meridian's claim representative, subsequently contacted Patton to discuss the claim. Appendix to Motion at Appendix 000024. Meridian's adjuster, Calvin Smith, inspected the property on February 27, 2021, and created an initial estimate on March 6, 2021, calculating $68,438.13 as the estimated replacement cost with $62,828.36 actual cash value. *Id.* at Appendix 000201-202. On March 7, 2021, Heath provided a copy of this initial estimate to Patton, informing him that the amount payable after application of the deductible for covered damages resulting from the freeze, based on the initial inspection undertaken on behalf of Meridian, was $56,759.36. Brief in Support of Motion at 7; Appendix to Motion at Appendix 000022, Appendix 000202-203. Patton took issue with the initial estimate and "was shocked and extremely angry because I knew the claim was closer to $400,000 because I recently remodeled the home and knew that the materials were expensive." Appendix to Response at APP 0130. Heath's notes indicate that he subsequently discussed the claim with Patton on March 8, 2021, and told him "[i]f his repairer notes any items in question, we can always discuss. And if

- 4 -

he sees anything left off, same thing . . . we will try our best to resolve any differences with he and his repairer." Appendix to Motion at Appendix 000021. On March 12, 2021, Meridian issued a payment of $56,759.36 to Patton for covered repairs. *Id.* at Appendix 000074.

Patton and his wife communicated with Meridian to find a suitable rental property that would be covered under the Policy as an "[a]dditional living expense" for them to move into during the repairs. Brief in Support of Motion at 8; Appendix to Response at APP 0050. On March 15, 2021, the plaintiff's wife, Cassie Patton, emailed Heath and his colleague, Mak Soto, informing them that they found essentially only one suitable rental property available for $16,500 per month for a minimum 6-month lease. Brief in Support of Motion at 8; Appendix to Motion at Appendix 000225-226. Meridian employed Housing Headquarters to provide comparative estimates for potential rental properties of similar size and location as the Property. Brief in Support of Motion at 8. On March 30, 2021, Heath sent Housing Headquarters report to the Pattons and Cassie Patton responded and indicated her displeasure with the options:

> How are those first two even comparable to our home? Third one is in terms of sq footage and rooms but again, no idea what this house looks like, the build out and the level of finish outs. Then with all the added fee[s] that puts it easily over $12k. I don't understand how these other options are even making sense to you all. We also don't want furnished. We have to move all our stuff out, so that

- 5 -

> would be going to a storage unit which would add onto the
> fees here.  So again, that brings it closer to $13k.  You are
> helping us prove our point and make our case.

Appendix to Motion at Appendix 000230.

Later that day after receiving Cassie Patton's email, Heath reached back out to

Housing Headquarters in an email asking:

> Can you please update the search, upon my review some of
> the properties were fairly far away and not of the same
> quality as the insured location.  Can you tighten the radius
> of the search around the insured location.  Additionally,
> can you be certain to search for high-quality/luxury homes
> within the downtown Dallas area.  Lastly, can you be
> certain to search for a 6-month rental term as opposed to 1
> year?

*Id.* at Appendix 000238.

Housing Headquarters found three available properties for rent that would

accommodate a 6-month lease costing approximately $11,585, $7,095, or

$6,060 per month.  *Id.* at Appendix 000227.  On April 1, 2021, Heath submitted the

additional rental properties to Patton, who responded with great displeasure at the

options presented.  *Id.* at Appendix 000242.  Patton protested the quality of rental

properties and estimated time of repair, stating that he refused "to have a lower

quality of living while our home is being repaired."  *Id.*

On April 1, 2021, Patton, through his counsel, served a pre-suit demand letter

alleging violations of the Texas Insurance Code and the Deceptive Trade Practices

- 6 -

Act ("DTPA").  Brief in Support of Motion at 9; Exhibit I to Notice of Removal (docket entry 1-11).  This occurred approximately six weeks after the date of the claimed loss and, according to Meridian, while the adjustment of the claim was still ongoing.  *Id.*  The letter demanded more than $300,000 in additional damages along with $16,500 per month as rent for additional living expenses until the repairs were complete.  *Id.*  Meridian refused to pay $16,500 per month as rent under "additional living expense" coverage after presenting alternative properties to Patton that were priced per month from $3,500 to $10,000.  Brief in Support of Motion at 9.  Upon review of the Housing Headquarters reports, Meridian determined that an appropriate amount representing "necessary increase[s] in living expenses" covered under the Policy's "[a]dditional living expense[s]" coverage included $21,000 for an estimated three months' rent plus an additional payment of $14,000 and paid Patton this amount on April 1, 2021.  *Id.*; Appendix to Response at APP 0050.  By letter dated April 9, 2021, Meridian acknowledged Patton's legal representation.  Appendix to Motion at Appendix 000243-245.  On April 23, 2021, Meridian responded to the pre-suit demand letter through counsel and assumed liability for any of its adjusters, including Brian Heath, Mak Soto, Jon Cherry and any other persons who were involved in Patton's claim and requested a reinspection of the Property pursuant to Texas Insurance Code § 542A.004.  Exhibit J to Notice of Removal (docket entry 1-12).

Patton's counsel sent Meridian an estimate of his own detailing $132,692.59 as the "replacement cost value" and "net claim" on May 4, 2021. Appendix to Motion at Appendix 000376-400. Meridian employed ITEL Laboratories, Inc. ("ITEL") on March 29, 2021, to test the wood floors at the Property after Patton's general contractor, Randy Oliver ("Oliver"), disagreed with Meridian's initial finding that the Property's wood floors were pre-finished, which would change the total estimated cost of repairs in the initial estimate. Brief in Support of Motion at 8; Appendix to Motion at Appendix 000144-146, Appendix 000228-229. Meridian reviewed Patton's estimate and waited for ITEL's wood sample report to reevaluate the scope and cost of its estimated repairs that were disputed by Patton. Brief in Support of Motion at 9; Appendix to Motion at Appendix 000246-272. ITEL confirmed Oliver's finding that the wood was not pre-finished as Meridian initially thought, and Meridian revised its estimate accordingly. Appendix to Motion at Appendix 000228-229, Appendix 000273-305. Meridian subsequently provided a revised estimate, dated June 4, 2021, with a cost of repair calculated as $118,154.47 with an actual cash value settlement for the damaged property of $105,158.48 after considering depreciation, deductible amount, and prior payments. Brief in Support of Motion at 10; Appendix to Motion at Appendix 000274.

Meridian contends that, "through assistance of counsel, [it] sought a discussion regarding its revised estimate and additional living expenses so that

- 8 -

Meridian could fully understand the differences and resolve disputed issues[,]" but that Patton allegedly never responded and instead filed his Original Petition on June 10, 2021.  Brief in Support of Motion at 10; *see* Exhibit D to Notice of Removal ("Plaintiff's Original Petition") (docket entry 1-6).  Patton contends that, "[o]n June 7, 2021, after the pre-suit notice period lapsed, Plaintiff's counsel e-mailed counsel for Defendant inquiring about settlement before filing the lawsuit.  The following day Defendant revised its low-ball estimate for the first time, after threat of a lawsuit.  To date, Defendant has never explained in writing why Plaintiff received anything less than $450,228."  Brief in Support of Response at 7 (internal citations omitted); Appendix to Response at APP 0207 (email from Patton's counsel to Meridian noting that 60 days had passed since pre-suit notice and asking if Meridian was interested in discussing settlement).  However, as noted above, although Patton contends that it was the day after the June 7, 2021, email that Meridian revised its estimate, the date on Meridian's revised estimate is June 4, 2021.  Appendix to Motion at Appendix 000302.

Meridian asserts that it asked Patton "to submit a supplemental contents list as Meridian issued two separate payments on June 23, 2021 to Plaintiff in the amounts of $11,913.17 and $48,399.12[]" and that "[a]dditional payment(s) followed but the litigation continue[d]."  Brief in Support of Motion at 10; Appendix to Motion at Appendix 000006, Appendix 000075.  Patton produced a revised

- 9 -

estimate of his own, dated September 21, 2021, totaling $152,378.05. *Id.* at Appendix 000307-333. Patton asserts that he "has spent $339,549 on dwelling repairs and Defendant paid $56,759.36 and closed the claim. There is a genuine issue of material fact regarding the value of Plaintiffs claims and Defendants unfair, deceptive, and bad-faith settlement practices." Brief in Support of Response at 8 (internal citations omitted). Meridian contends Patton's estimate "failed to take into consideration the Policy deductible and depreciation, and included unnecessary overhead and profit charges along with doubling the necessary amounts for the cabinets and tile in the master bathroom." Brief in Support of Motion at 10. Meridian also asserts that "[a]s of June 23, 2021, Meridian submitted payments to Plaintiff amounting to a total of $152,071.65[]" and that "[a]dditional payment was made recently." *Id.* at 10-11.

Meridian's position is that it has "timely and accurately acknowledged and adjusted Plaintiff's claim[,]"[1] "timely answered Plaintiff's petition after removing this case to federal court,[2] and later filed a First Amended Answer[,]"[3] and "den[y] that

---

[1]     Citing Appendix to Motion at Appendix 000006-24, Appendix 000273-305, Appendix 000334-335.

[2]     Citing Meridian Security Insurance Company's Original Answer to Plaintiff's Original Petition (docket entry 8).

[3]     Citing Meridian Security Insurance Company's First Amended Answer

the property conditions and damages for which it has not made payment are losses covered under the Policy."[4]  *Id.* at 11.  Additionally, Meridian contends "its decision on Plaintiff's claim complied with the terms and conditions of the Policy and Texas law[]" and, finally, that Patton "is failing to mitigate damage by incurring excessive additional living expenses."  *Id.*  Meridian moves for partial summary judgment as to the Texas Insurance Code claims, the breach of common law duty of good faith and fair dealing claim, and the breach of express or implied warranty claim.  Motion at 1.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[5]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*

---

to Plaintiff's Original Petition (docket entry 15).

[4]     Citing Appendix to Motion at Appendix 000202-224, Appendix 000273-305.

[5]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response

- 12 -

to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### B. Evidentiary Objections

Before considering the merits of Meridian's motion for partial summary judgment, the court must address Patton's objections to evidence relied on by Meridian in its motion, as well as Meridian's objections to the evidence relied on by Patton in his response.

Patton objects to "the Claim File Log Notes [Appendix 1-198] in its entirety as it contains hearsay and is conclusory with no underlying facts to support the subjective beliefs stat[ed] therein." Brief in Support of Response at 8. The court is not required to review large quanta of evidence to ferret out inadmissible statements. Rather, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to exclude and stating the specific grounds upon which each piece of evidence should be excluded. See *United States v. Avants,* 367 F.3d 433, 445 (5th Cir. 2004). Objections lacking specificity do not satisfy the requirements of Rule 103. *United States v. Polasek,* 162 F.3d 878, 883 (5th Cir. 1998). "A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection." *Id.* (citations omitted). Furthermore, Rule 56(c)(2) provides "[a] party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2)
(emphasis omitted).  Meridian contends that it plans to "elicit testimony at trial the
claim log notes are records kept in the course of a regularly conducted activity of
Meridian's business, which will constitute an exception from the rule against
hearsay[]" and further, that "Meridian expects adjuster Brian Heath to testify
consistent with his contemporaneous notes at trial."  Reply at 1-2; *see* FED. R. EVID.
803(6)(B).  Because Patton's objections do not meet the specificity requirement of
Rule 103(a)(1), and Patton has failed to demonstrate that "the material cited to
support or dispute a fact cannot be presented in a form that would be admissible in
evidence" the court overrules Patton's objections to Meridian's summary judgment
evidence. *See* FED. R. CIV. P. 56(c)(2).  Even so, the court will not consider any
evidence that is plainly inadmissible.  *See* FED. R. EVID. 103(d).

"Meridian objects to Plaintiff's Unsworn Declaration, Response App'x, 130-
131, ("Declaration") because it contains a multitude of conclusory statements that
are not competent summary judgment evidence."  Reply at 2.  Meridian provides a
bullet-point list of examples of allegedly inadmissible hearsay in Patton's declaration,
arguing that "these statements are either summary assertions which are not made on
Plaintiff's personal knowledge, or contain ultimate or conclusory facts and
conclusions of law."  *See* Reply at 2-3.  "[B]ecause the court did not find it necessary
to rely on this evidence in support of its decision, these objections are overruled as

moot." *Detgen ex rel. Detgen v. Janek*, 945 F.Supp.2d 746, 753 (N.D. Tex. 2013) (Fish, J.), *aff'd*, 752 F.3d 627 (5th Cir. 2014); see *Continental Casualty Company v. St. Paul Fire & Marine Insurance Company*, 2006 WL 984690 at *1 n. 6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence not relied on by the court in ruling on motion for summary judgment).

Further, Meridian objects to the following items appended to the response: a "house construction" ledger,[1] a "rent & lease" expense ledger,[2] and a "contractor's invoice."[3]  Reply at 3-4.  These objections are also overruled as moot because "the court did not find it necessary to rely on this evidence in support of its decision[.]" *Janek*, 945 F.Supp.2d at 753.

## C.  Texas Insurance Code

The Texas Insurance Code § 541, subchapter B, prohibits unfair competition, false advertising, misrepresentations about insurance policies, and unfair settlement practices. TEX. INS. CODE § 541.051(1).  Patton has alleged that Meridian violated several subsections of the Texas Insurance Code, including § § 541.051,

---

[1]     Appendix to Response at APP 0132.

[2]     Appendix to Response at APP 0133.

[3]     Appendix to Response at APP 0134-60.

541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), 541.060(a)(4), 541.060(a)(7), 541.061(1), 542.055, 542.056.  Each subsection will be addressed below.

### i. Misrepresentation

Patton's claims that Meridian violated Texas Insurance Code § § 541.051 and 541.061 rest primarily on the same allegation: that Meridian "misrepresented the terms of Plaintiff's additional living expenses coverage."  *See* Plaintiff's Original Petition at 6-7.  Meridian's motion also groups these two claims under the umbrella of "Misrepresentation."  Brief in Support of Motion at 13-14.  Therefore, the court will also address these claims together.  Section 541.051 provides that it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

> (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:
> > (A) the terms of the policy;
> > (B) the benefits or advantage promised by the policy; or
> > (C) the dividends or share of surplus to be received on the policy.

TEX. INS. CODE § 541.051.

Section 541.061 provides it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

> (1) making an untrue statement of material fact;
> (2) failing to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made;
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
> (4) making a material misstatement of law; or
> (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

*Id.* § 541.061.

Patton contends that Meridian violated § 541.051 "when it misrepresented the terms of Plaintiff's additional living expenses coverage[]" and "failed to provide evidence to support its denial of the claim pursuant to the terms of the policy . . . ." Plaintiff's Original Petition at 7. Patton also argues that Meridian "advertised goods or services with intent not to sell them as advertised in violation of the DTPA." Brief in Support of Response at 15. Patton's position is that "Presley Insurance Group, LLC, Defendant's agent, violated these provisions when it told Plaintiff that he had $182,070 for additional living expenses when in fact it was nonexistent[]" and that Patton "has incurred $110,679 in additional living expenses and has received only $21,000[.]" *Id.*

Patton similarly contends that Meridian violated § 541.061 "when it misrepresented the terms of Plaintiff's additional living expenses coverage. These are untrue statements of material fact. This is also evidence of statements that would

mislead a reasonably prudent person to a false conclusion of a material fact that the damage was caused by something other than a plumbing leak or water damage." Plaintiff's Original Petition at 6. Patton argues that "Heath made numerous untrue statements of material fact[]" when he allegedly told Patton the following:

> i. There was no exterior damage 'observed at the time of inspection,' when in fact over $10,000 in windows and landscaping were damaged by the freeze;
>
> ii. There was no damage to Plaintiff's contents, when in fact $11,264 in contents were damaged;
>
> iii. There was no Loss of use/additional living expenses, when the home was clearly uninhabitable after the loss.

Brief in Support of Response at 13 (internal citations omitted).

Meridian contends that Patton's allegations are "baseless" and that he "has shown no evidence that Meridian misrepresented or made an untrue statement of a material fact or Policy provision relating to the coverage at issue during its entire course of handling this insurance claim." Brief in Support of Motion at 13-14. The three statements listed above were made in the original Loss Report authored by Heath after the initial inspection that occurred on February 27, 2021. Appendix to Motion at Appendix 000199-200. It was based on this original Loss Report that Meridian initially paid Patton $56,759.26. *Id.* at Appendix 000201. However, the evidence shows that after this original estimate and payment "Meridian engaged in sustained dialogue with Plaintiff as to the scope of property damages and his claimed

- 18 -

need for additional living expenses.  Meridian considered Plaintiff's submissions and issued additional payments several times over the course of the claim investigation," even after this lawsuit was filed.  *See* Reply at 5; Appendix to Motion at Appendix 000021 (Heath's notes reflecting communications with Patton about the claim saying "we can always discuss" and "we will try our best to resolve any differences with [Patton] and his repairer"), Appendix 000074-76 (list of payments made to Patton under various Policy provisions from March 12, 2021 to August 4, 2021), Appendix 000144-146 (Heath's notes reflecting decision to hire ITEL to examine wood flooring so any necessary adjustments to original estimate can be made), Appendix 000228-229 (ITEL report evaluating wood floors), Appendix 000273-305 (revised estimate).

Patton has failed to provide evidence that Heath was predetermined to deny the claim from inception or that he misrepresented the Policy in any way. Patton argues that Meridian "failed to provide evidence to support its denial of the claim pursuant to the terms of the policy[.]"  *See* Plaintiff's Original Petition at 7. However, Meridian provided detailed estimates to Patton outlining the estimated value of necessary repairs throughout the Property.  *See* Appendix to Motion at Appendix 000202-224 (original estimate), Appendix 000273-305 (revised estimate). Meridian has also provided evidence that it discussed these estimates with Patton on numerous occasions and made changes based on ongoing discoveries throughout the adjustment process.  See *id.* at Appendix 000006-000024 (Heath's claim file log

notes detailing various communications he had with Patton and his wife as the adjustment process was ongoing), Appendix 000246 (email from Heath to Calvin Smith asking Smith to review and make appropriate changes to Meridian's estimate based on the Patton's estimate), Appendix 000273-305 (revised estimate). Therefore, Patton's assertion that Meridian failed to provide evidence in support of its denial of the claim is unsupported by the record. Additionally, the evidence does not support Patton's argument that his claim was denied by Meridian. Meridian never categorically denied the claim or represented to Patton that the damage to his property was not covered under the Policy.

Patton also contends that Meridian "advertised goods or services with intent not to sell them as advertised in violation of the DTPA." Brief in Support of Response at 15. However, no evidence is cited in support of this assertion and Patton has failed to point to any competent summary judgment evidence creating a genuine issue of material fact as to this claim. Patton also argues that "Heath continued to misrepresent the facts and the policy despite being in possession of evidence that the claim was worth close to $400,000." *Id.* at 14. However, Patton does not show exactly what evidence Heath was allegedly in possession of proving that the claim was close to $400,000 other than arguing that because Patton had spent approximately $400,000 on a recent remodel means that the covered damage must therefore be close to $400,000. See *id.* Additionally, Patton asserts that

- 20 -

"Heath failed to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made when he failed to disclose that he found a rental property for $11,585 (only $5,000 less than the property leased by Plaintiff)." *Id.* Heath did not fail to disclose that fact. Rather, Heath only became aware of this rental option for $11,585 per month when he received the Housing Headquarters report dated March 30, 2021. *See* Appendix to Motion at Appendix 000227. He sent this report to Patton on April 1, 2021, who immediately protested the quality of the rental options presented, refusing to accept the rental property priced at $11,585 per month. *Id.* at Appendix 000239-41. Patton has not provided any evidence supporting the assertion that Heath failed to state a material fact necessary to make other statements made not misleading. Patton's argument that "Heath made a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact when he concluded that Plaintiff was only entitled to 3 months of rent at $7,000 a month, when he knew the current market was at least $11,585 per month and Plaintiff signed a lease for over $16,000 a month[]" also fails because it is both a mischaracterization of the facts and a conclusory statement unsupported by the evidence. *See* Brief in Support of Response at 14. Meridian obtained a report from Housing Headquarters concluding that there were at least three rental properties available for 6-month leases that were priced at $11,585, $7095, or $6060 per month respectively. Appendix to

- 21 -

Motion at Appendix 000227.  Upon review of Housing Headquarters reports, Meridian determined that an appropriate amount representing "necessary increase[s] in living expenses" covered under the Policy's "additional living expense[s]" provision included $21,000 for an estimated three months' rent plus an additional payment of $14,000 and paid Patton this amount on April 1, 2021.  Brief in Support of Motion at 9; Appendix to Response at APP 0050.  Simply because Patton disagrees with the amount allocated as an additional living expense does not mean that Meridian misrepresented the terms of the policy.  *See* TEX. INS. CODE § 541.051.  Further, the fact that Patton chose to execute a lease for a rental property for over $16,000 a month does not mean that $16,000 per month was actually "a necessary increase in living expenses incurred by [the Pattons] so that [their] household can maintain its normal standard of living" as covered under the policy.  Appendix to Response at APP 0050.

Patton contends that Heath was "predetermined to deny the claim from inception[]" and attempts to support his argument with the following points: "Heath (1) worked almost exclusively for insurance companies; (2) was aware that a $400,000 claim would cause the insurer to incur liability; and (3) nearly exclusively found no damage for items there were in fact damaged."  Brief in Support of Response at 13-14 (internal citations omitted).  The evidence cited in support of these contentions are Patton's own declaration where he states "I could tell through

[Heath's] body language that Mr. Heath was predetermined to deny my claim and didn't want to spend a lot of time investigating the scope and amount of damages[]" and accuses Heath of making "numerous false statements and misrepresentations of material facts[]" and Meridian's General Loss Report wherein Heath made his initial estimate of the cost of repairs and value of the claim. *Id.* at 14; Appendix to Response at APP 0130; Appendix to Motion at Appendix 000199-201. Patton also asserts "the evidence supported a logical inference that Defendant dispatched Heath because of Heath's general view that the loss was minor and limited to $56,759, thus additional living expenses would not be necessary." Brief in Support of Response at 14 (citing Appendix to Response at APP 0130; Appendix to Motion at Appendix 000199). Conclusory allegations are not competent summary judgment evidence and are thus insufficient to defeat a summary judgment motion. See *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsupported speculation, assertions, or inferences are also not competent summary judgment evidence. See *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). Patton has failed to point to any competent summary judgment evidence that Heath had a "general view that the loss was minor" before being dispatched by Meridian or that Meridian "dispatched Heath because of Heath's general view that the loss was minor and limited to $56,759, thus additional living expenses would not be necessary." *See* Brief in Support of Motion at 14. Merely stating that the evidence supported a logical

- 23 -

inference without pointing to any evidence that does support that inference is

unsupported speculation which is not competent summary judgment evidence.

Similarly, the statements in Heath's declaration that "I could tell through [Heath's]

body language that Mr. Heath was predetermined to deny my claim and didn't want

to spend a lot of time investigating the scope and amount of damages[]" and accusing

Heath of making "numerous false statements and misrepresentations of material

facts[,]" without providing evidence illustrating the falsity of Heath's statements, are

conclusory and self-serving and therefore, not competent summary judgment

evidence.  *See* Appendix to Response at APP 0130.  Additionally, Patton provides no

evidence that Heath "worked almost exclusively for insurance companies" or "nearly

exclusively found no damage for items that were in fact damaged."  *See* Brief in

Support of Motion at 14.

Patton attempts to align this case with *State Farm Lloyds v. Nicolau*, 951

S.W.2d 444 (Tex. 1997), where the Supreme Court of Texas concluded that the

insurer, State Farm, investigated the claim in a manner calculated to construct a

pretextual basis for denying the claim.  *See* Brief in Support of Response at 12.  In

*Nicolau*, the insureds hired an engineer to investigate the cause of significant damage

to their home.  *Nicolau*, 951 S.W.2d at 446-47.  After the engineer determined that

there was a significant leak in the plumbing system, the Nicolaus filed a claim with

State Farm.  *Id.* at 447.  State Farm then commissioned two reports by its own hired

adjusters who expressed doubt that the leak was responsible for the foundation damages. *Id.* The Nicolaus gave State Farm their engineers' report reflecting an opinion that plumbing leaks were the culprit for the damage to the house. State Farm then hired Haag Engineering to examine the property. *Id.* After receiving Haag Engineering's report finding no connection between the plumbing leaks and the damage to the house, State Farm denied the claim. *Id.* The Nicolaus then hired another engineer, who also concluded that plumbing leaks were the source of the problem. *Id.* They forwarded this second report to State Farm, who again denied the claim. *Id.* The Nicolaus then filed suit against State Farm. *Id.* The Court determined that "there [was] some evidence that State Farm denied the claim without a reasonable basis or without attempting to objectively determine whether its liability had become reasonably clear[]" to support the jury's finding that State Farm denied the Nicolaus' claim in bad faith. *Id.* at 448, 450. There was evidence that the Haag engineer (1) worked almost exclusively for insurance companies; (2) was aware that plumbing leaks would cause the insurer to incur liability; and (3) nearly exclusively found no liability for the insurer. *Id.* Additionally, "the evidence support[ed] a logical inference that State Farm obtained the reports from Haag Engineering because of Haag's general view that plumbing leaks are unlikely to cause foundation damage. State Farm's claim superintendent, Ralph Cooper, testified that he was aware of Haag's view when he requested the first report[.]" *Id.* at 448-49

- 25 -

(quoting testimony from State Farm's claim superintendent that he knew before he hired Haag that Haag's general opinion was that localized leaks underneath a house would not cause foundation damage). The Nicolaus were also able to present evidence that State Farm and its hired engineers did not conduct an adequate investigation. *Id.* at 449. For instance, a licensed insurance adjustor testified at trial that State Farm's failure to examine the leaking pipe, take core samples, and perform other tests amounted to an unreasonable investigation. *Id.* Patton has failed to put forth any evidence like that in *Nicolau* to support his assertion that Heath misrepresented the facts and the Policy in any way or that Meridian conducted its investigation of the claim in a manner designed to deny the claim without a reasonable basis or without attempting to objectively determine whether its liability had become reasonably clear. See *id.* at 448; see also *Nicolau*, 951 S.W.2d. at 449.

Given that Patton has failed to show a genuine issue of material fact on the Texas Insurance Code claims under § 541.051 and 541.061, summary judgment is **GRANTED** on both of those claims.

### ii. *Unfair Settlement Practices*

Patton alleges that Meridian violated Texas Insurance Code § 541.060 which provides, in relevant part, "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:"

(1) misrepresenting to a claimant a material fact or policy
provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt,
fair, and equitable settlement of:

    (A) a claim with respect to which the insurer's
    liability has become reasonably clear; or

    (B) a claim under one portion of a policy with
    respect to which the insurer's liability has become
    reasonably clear to influence the claimant to settle
    another claim under another portion of the coverage
    unless payment under one portion of the coverage
    constitutes evidence of liability under another
    portion;

(3) failing to promptly provide to a policyholder a
reasonable explanation of the basis in the policy, in
relation to the facts or applicable law, for the insurer's
denial of a claim or offer of a compromise settlement of a
claim;

(4) failing within a reasonable time to:

    (A) affirm or deny coverage of a claim to a
    policyholder; or

    (B) submit a reservation of rights to a policyholder;

* * *

(7) refusing to pay a claim without conducting a reasonable
investigation with respect to the claim[.]

Tex. Ins. Code § 541.061.

To prevail on a claim under § 541.060(a)(1), a plaintiff must specify a misrepresentation that is both: (1) of "a material fact or policy provision," and (2) "relating to coverage at issue." See *ValTex Properties LLC v. Central Mutual Insurance Company*, No. 3:20-CV-1992-B, 2020 WL 6781944, at *2 (N.D. Tex. Nov. 18, 2020) (Boyle, J). Patton contends: "Defendants[] misrepresented a material fact

- 27 -

or policy provision relating to coverage at issue when it intentionally misrepresented the terms of Plaintiff's additional living expenses coverage. Defendants[] promised to cover 'direct physical loss' to the dwelling and failed to do so." Plaintiff's Original Petition at 7. Patton asserts that "[a]djuster Brian [H]eath violated these provisions when he told Patton the following:"

> i. There was [no] exterior damage "observed at the time of inspection," when in fact over $10,000 in windows and landscaping were damaged by the freeze;
>
> ii. There was no damage to Plaintiff's contents, when in fact $11,264 in contents were damaged;
>
> iii. There was no Loss of use/additional living expenses, when the home was clearly uninhabitable after the loss.

Brief in Support of Response at 15-16 (internal citations omitted).

Patton argues that "Heath knew the repairs would exceed $400,000 but continued to misrepresent the facts and the policy." *Id.* at 16 (internal citation omitted). Meridian contends that "Plaintiff has not presented any evidence of Meridian's alleged misrepresentations or 'promises' as alleged. The most the evidence possibly shows is a *bona fide* dispute between Plaintiff and Meridian regarding coverage for certain claimed damages and benefits under the Policy. Meridian made payments to Plaintiff exceeding $152,071.65, which included payments for reasonable living expenses." Brief in Support of Motion at 15. While Patton may feel that Meridian underpaid his claim, Patton has failed to identify how the alleged

underpayment constitutes a misrepresentation of a material fact or policy provision relating to the coverage at issue.  See *One Way Investment Inc. v. Century Surety Company*, No. 3:14-CV-2839-D, 2014 WL 6991277, at *4 (N.D. Tex. Dec. 11, 2014) (Fitzwater, J.) ("[A]s pleaded, [plaintiff] is alleging that [defendant] misrepresented that the damage to the property was not covered under the Policy by representing that the wind and hail damage to the building was far less extensive than it actually was and that it was caused by factors that did not trigger coverage under the Policy. But those statements are of a type that this court has held are not within the scope of § 541.060(a)(1) because they do not relate to 'coverage at issue.'") (citing *Messersmith v. Nationwide Mutual Insurance Company*, 10 F.Supp.3d 721, 724 (N.D. Tex. 2014) (Solis, J.) (holding, *inter alia*, that claims adjuster had been improperly joined because the alleged misrepresentation that "there was no damage to . . . roof when in fact there was damage" and "that the damage was only cosmetic in nature when in fact there was leaking resulting from the damage" were not statements that related to "coverage at issue")).  "The misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage." *Messersmith*, 10 F.Supp.3d at 724.

Patton has failed to point to any evidence that misrepresentations were made about "a material fact or policy provision relating to coverage at issue."  See TEX. INS. CODE § 541.060(a)(1).  Meridian correctly contends that there is no issue of material

fact raised that Meridian misrepresented a material fact or policy provision relating to the coverage at issue.

Therefore, summary judgment is **GRANTED** on Patton's claim for violation of § 541.060(a)(1) of the Texas Insurance Code.

Section 541.060(a)(2)(A) prohibits an insurer from "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of an insured's claim once "the insurer's liability has become reasonably clear." TEX. INS. CODE § 541.060(a)(2)(A). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham v. State Farm Mutual Automobile Insurance Company*, 103 F.3d 456, 459 (5th Cir. 1997). To sustain such a claim, Patton must establish the absence of a reasonable basis for denying or delaying payment of the claim, and that Meridian knew, or should have known, that there was no reasonable basis for denying or delaying payment of this claim. See *id.*; see also *Ross v. Hartford Lloyd Insurance Company*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *9 (N.D. Tex. July 4, 2019) (O'Connor, J.) (citing *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48, 49 (Tex. 1997)) ("[A]n insurer breaches this duty of good faith and fair dealing 'if the insurer knew or should have known that it was reasonably clear that the claim was covered,' but denies or unreasonably delays

payment of the claim."). Insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. *St. Paul Lloyd's Insurance Company v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App.--Houston [14th Dist.] 1991, writ denied). A *bona fide* coverage dispute is sufficient reason for failure of an insurer to make a prompt payment of a loss claim. *Id.* If the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith. *Lyons v. Millers Casualty Insurance Company of Texas*, 866 S.W.2d 597, 600 (Tex. 1993).

Patton contends that Meridian "failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim where its liability became reasonably clear. Misrepresenting the terms of Plaintiff's additional living expenses coverage is not good faith. It's evidence of conscious disregard of the truth." Plaintiff's Original Petition at 7. Additionally, Patton argues "Adjuster Brian Heath was determined to deny the claim from inception. Adjuster Brian Heath stated that he prepared an estimate for 'all' necessary repairs and recommended Plaintiff be paid only $56,759.36. Then Brian Heath closed the claim on March 6, 2021." Brief in Support of Response at 16 (internal citations omitted). Patton also contends that "[a]fter receiving Plaintiff's pre-suit notice for over $300,000 and revised estimate, Heath failed to examine the estimate or meet with Plaintiff's contractor to explore the

differences, this is evidence of an unreasonable investigation similar to *Nicolau*." *Id.* (internal citations omitted).

Meridian contends that "Meridian conducted a thorough inspection and initially prepared an estimate that totaled $56,759.36 (actual cash value) after the Policy deductible was applied . . . Meridian further investigated Plaintiff's claim by employing ITEL after Mr. Oliver disagreed with Meridian's finding that the Property's wooden floors were pre-finished and its estimated cost of repairing the same." Brief in Support of Motion at 17 (internal citations omitted). After receiving ITEL's report, Meridian revised its estimate on June 4, 2021, and subsequently issued payments to Patton totaling $105,158.48. *Id.* at 17-18; Appendix to Motion at Appendix 000228-229, Appendix 000273-305. Meridian also argues that Patton's estimate "failed to take into consideration the Policy deductible and depreciation, and included unnecessary overhead and profit charges along with doubling the necessary amounts for the cabinets and tile in the master bathroom." Brief in Support of Motion at 18. Meridian further contends that "[a]n insurer's 'decision to consult with additional experts before making a final coverage decision speaks to the thoroughness of its investigation.' Complicated coverage issues, such as those presented here, require more detailed investigations which Meridian thoroughly performed." *Id.* (citing *J.P. Columbus Warehousing, Inc. v. United Fire & Casualty Company*, No. 5:18-cv-100, 2021 WL 799321, at *9 (S.D. Tex. Jan. 13, 2021)

(quoting *Tri Investments, Inc. v. United Fire & Casualty Company*, 553 F. Supp. 3d 400, 410 (S.D. Tex. 2020)).  Additionally, Meridian asserts, and the evidence supports, that Meridian "continuously maintained correspondence with Plaintiff, carefully considered Plaintiff's disagreements, revised its estimate upon review of further investigations such as the ITEL report, and made multiple payments to Plaintiff for reasonable living expenses and repairs to the Property."  *Id.*; Appendix to Motion at Appendix 000021 (Heath's notes reflecting communications with Patton about the claim saying "we can always discuss" and "we will try our best to resolve any differences with [Patton] and his repairer"), Appendix 000074-76 (list of payments made to Patton under various Policy provisions from March 12, 2021 to August 4, 2021), Appendix 000144-146 (Heath's notes reflecting decision to hire ITEL to examine wood flooring so any necessary adjustments to original estimate can be made), Appendix 000228-229 (ITEL report evaluating wood floors), Appendix 000273-305 (revised estimate).  "If nothing is presented suggesting that the evidence upon which the insurer relied was obtained in an unobjective or unfair manner and if that evidence, viewed in isolation, reasonably suggests that the insured's claim is invalid or questionable, the insurer's basis is reasonable as a matter of law."  *Thompson v. Zurich American Insurance Company*, Civ. No. A-09-CA-493-SS, 2010 WL 3784204, at *5 (W.D. Tex. Sept. 21, 2010) (citing *Lyons,* 866 S.W.2d at 601), *aff'd*, 664 F.3d 62 (5th Cir. 2011).

- 33 -

Although Patton feels that he was underpaid on his claim, particularly for "additional living expense coverage," "[t]here is no evidence in the record establishing a $16,000/month lease is in any way reasonable and therefore owed under the Policy (subject to all terms, provisions, etc.)." *See* Reply at 5-6.  The court agrees with Meridian that the fact Meridian "obtained rental information for properties charging less than $16,000/month for additional living expenses" and, based on the Housing Headquarters report, determined that an appropriate amount representing "necessary increase[s] in living expenses" covered under the Policy's provision for "additional living expense[s]" included $21,000 for an estimated three months' rent plus an additional payment of $14,000 and paid Patton this amount on April 1, 2021, is not evidence of bad faith under these circumstances.  *Id.* at 6; Appendix to Response at APP 0050.  Simply because Patton disagrees with the amount allocated as an additional living expense does not, on its own, mean that Meridian acted in bad faith.

The evidence reflects that "Meridian engaged in sustained dialogue with Plaintiff as to the scope of property damages and his claimed need for additional living expenses.  Meridian considered Plaintiff's submissions and issued additional payments several times over the course of the claim investigation" even after this lawsuit was filed.  See *id.* at 4-5; Appendix to Motion at Appendix 000021, Appendix 000074-76, Appendix 000144-146, Appendix 000228-229, Appendix 000273-305. Patton has failed to provide evidence that Heath was "predetermined to deny the

- 34 -

claim from inception" or that Meridian "failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement[.]" *See* TEX. INS. CODE § 541.060(a)(2)(A); *Cantu v. Lloyds*, No. 7:13-CV-105, 2015 WL 12532732, at *6 (S.D. Tex. Aug. 7, 2015) ("A discrepancy between the estimates and disagreement as to the amount of damage is not tantamount to bad faith."); *Torres v. Lloyd's of London Syndicate No. 4242*, No. 1:10-CV-000200, 2011 WL 6257144, at *8 (S.D. Tex. Dec. 14, 2011) ("The mere fact that Plaintiffs' report and Defendants' reports conflicted does not mean Defendants must affirm coverage.").

Therefore, summary judgment is **GRANTED** on Patton's claim for violation of § 541.060(a)(2)(A) of the Texas Insurance Code.

Section 541.060(a)(3) prohibits an insurer from "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim[.]" TEX. INS. CODE § 541.060(a)(3). "Section 541.060(a)(3) requires insurers keep insureds informed about important developments with their claim. The statute does not obligate an insurer to provide an insured every piece of information or every written document the insurer has regarding the offer or the investigation. Rather, the statute requires the insurer to provide a *reasonable explanation* of the factual or legal basis in the policy, in relation to the facts or applicable law." *Mid-Continent Casualty Company v. Eland Energy, Inc.*, 795 F. Supp.

- 35 -

2d 493, 534 (N.D. Tex. 2011) (Fitzwater, J.) (emphasis in original), *aff'd*, 709 F.3d
515 (5th Cir. 2013).  Patton contends that Meridian "failed to promptly provide a
reasonable explanation of the basis in the policy for the insurer's denial of a claim and
refused to pay a claim without conducting a reasonable investigation.  Adjuster
Heath's scant denial letters provided no explanation for the denial of covered
damages."  Plaintiff's Original Petition at 8.

Meridian maintains that "Meridian timely provided reasonable explanations of
its coverage determinations, inclusive of reasonable living expenses, as it employed a
housing specialist from Housing Headquarters to research and review local rental
properties near Plaintiff's residence in order to accommodate Plaintiff's temporary
living situation."  Brief in Support of Motion at 15-16 (citing Appendix to Motion at
Appendix 000227 (Housing Headquarters report), Appendix 000237-238 (email
from Meridian representative, Jon Cherry, to Housing Headquarters asking it to
revise and refine its search to properties closer to the Property and that are
categorized as "high-quality/luxury homes"), Appendix 000239-240 (email from
Heath to Patton attaching Housing Headquarters report).  Further, Meridian asserts
that "Meridian's payments to Plaintiff amounting to a total exceeding $152,071.65
along with its multiple investigations into Plaintiff's property damage and temporary
living should be considered reasonable."  *Id.* at 16.  Additionally, "Meridian's many
communications with Plaintiff as well as its original and revised estimates provided a

high level of detail with respect to Plaintiff's claimed damages and living expenses."
*Id.* (internal citations omitted).

Both Meridian's initial estimate and its revised estimate detail and explain the specific costs of repairs line-by-line covered by the Policy and there is evidence that Meridian engaged in ongoing communications with Patton and his representatives as the adjustment process was ongoing. *See* Appendix to Motion at Appendix 000202-224 (original estimate), Appendix 000246 (email from Heath to Calvin Smith asking Smith to review and make any appropriate changes to Meridian's estimate based on the Patton's estimate), Appendix 000273-305 (revised estimate); *see also* Appendix to Motion at Appendix 000006-000024 (Heath's claim file log notes detailing various communications he had with Patton and his wife as the adjustment process was ongoing). Meridian's estimates "provide a reasonable explanation of the factual or legal basis in the policy, in relation to the facts or applicable law." See *Mid-Continent Casualty Company*, 795 F. Supp. 2d at 534; see also *Salinas v. State Farm Fire & Casualty Company*, No. CV B-10-194, 2012 WL 13055350, at *7 (S.D. Tex. Feb. 6, 2012) (granting summary judgment on the plaintiff's claims under § 541.060(a)(3) where the letter sent by the insurer to the insured "state[d] clearly that State Farm would not make any payment to Plaintiffs because the damages sustained were less than Plaintiffs' deductible in the Policy. The letter provides the policy provision—the amount of the deductible—on which State Farm based its decision to refuse payment

to Plaintiffs and provided a detailed estimate on how State Farm reached its conclusion."); *Texas Friends Chabad-Lubavitch, Inc. v. Nova Casualty Company*, 539 F. Supp. 3d 669, 684 (S.D. Tex. 2021) (granting summary judgment where the letter explaining decision of coverage "provided excerpts of the relevant Policy provisions that Defendant cited as precluding coverage. The letter explained that windows at the property 'were found to be leaking on multiple elevations[,]' that there was 'sustained repeated leakage and the caulking [was] worn allowing water seepage[,]' and that '[c]ontinuous water seepage, wear and tear and maintenance are excluded.' The letter also explained that 'wear found around the jacks and seams of the roofing material' also allowed water seepage. The letter related these facts to the relevant portions of the Policy that excluded coverage, just as § 541.060(a)(3) requires."). Meridian's revised estimate identifies the relevant Policy provisions – including the amount of the deductible – on which Meridian based its estimate. Appendix to Motion at Appendix to Motion at Appendix 000273. Additionally, the estimates identify detailed line-by-line necessary and covered repairs as well as recaps and summaries breaking down the estimate by room or Policy provision. *Id.* at Appendix 000202-224 (original estimate), Appendix 000275-305 (revised estimate). Meridian has presented sufficient evidence showing that it promptly provided reasonable explanations to Patton of its coverage determinations. Meanwhile, Patton has failed to present evidence creating a genuine issue of material fact that Meridian "failed to

- 38 -

promptly provide to a policyholder a reasonable explanation of the basis of the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." *See* TEX. INS. CODE. § 541.060(a)(3).

Therefore, summary judgment is **GRANTED** on Patton's claim for violation of § 541.060(a)(3) of the Texas Insurance Code.

Section 541.060(a)(4) prohibits a person in the business of insurance from "failing within a reasonable time to [either] (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder." TEX. INS. CODE § 541.060(a)(4). Patton contends that "Meridian systematically denied Plaintiff's claims at the initial valuation stage and offered less than the actual cost of repairs or additional living expenses incurred knowing that its valuations were inaccurate, unreliable, and biased toward generating estimates far below the true cost of repairs." Response at 1-2. Patton has failed to present competent summary judgment evidence supporting this assertion. A review of the record reflects that Meridian did not deny coverage of the claim, and that Meridian in fact affirmed coverage of the claim within a reasonable time. See *Carswell v. State Farm Lloyds*, No. 4:17-CV-149-A, 2017 WL 6054939, at *2 (N.D. Tex. Dec. 6, 2017) (McBryde, J.) (granting summary judgment on § 541.060(a)(4) where "[t]he summary judgment evidence establishes that defendant acknowledged coverage on the date the claim was reported" and plaintiff did "not contest this ground of the motion"); *La Verdure &*

- 39 -

*Associates v. Depositors Insurance Company*, No. 4:16-CV-00883, 2017 WL 4698150, at

*5 (E.D. Tex. Oct. 19, 2017) ("Nothing in Plaintiff's Second Amended Complaint

suggests that Defendant denied coverage or submitted a reservation of rights, but

suggests that Defendant affirmed coverage under the policy for over $10,000.").  The

evidence supports the following timeline of events:

> Meridian was notified of the insurance claim on February 17, 2021, and a day later directly communicated with Plaintiff about his submitted insurance claim so that it could commence a thorough and timely investigation.[4]  Meridian timely acknowledged Plaintiff's claim in writing by its February 22, 2021 letter sent to Plaintiff.[5]  Meridian then timely commenced its investigation of Plaintiff's insurance claim on February 23, 2021, by requesting an inspection of the Property. Meridian conducted its scheduled inspection on February 27, 2021.[6] Meridian clearly met the deadlines of claim acknowledgment and commencing an investigation within 15 days in compliance with the Texas Insurance Code. Following the inspection, Meridian prepared its March 6, 2021 initial estimate of damages to Plaintiff's Property which identified by line item in detail the specific cost of repairs covered by the policy and explained to Plaintiff its determinations.[7]

Brief in Support of Motion at 19-20.

---

[4]     Citing Appendix to Motion at Appendix 000022-000024 (Heath's notes indicating that he communicated with Patton and his wife, providing his contact information and general claim information, and discussing the inspection).

[5]     Citing Appendix to Motion at Appendix 000334-000335 (Acknowledgement of Claim).

[6]     Citing Appendix to Motion at Appendix 000199-000201 (report of inspection).

[7]     Citing Appendix to Motion at Appendix 000202-000224 (original estimate).

The evidence also supports that Meridian subsequently provided a revised estimated, dated June 4, 2021, considering new developments affecting the original estimate. *Id.* at 10; Appendix to Motion at Appendix 000274; *see also* Appendix to Motion at Appendix 000074-76 (list of payments made to Patton under various Policy provisions from March 12, 2021, to August 4, 2021). Meridian also contends that, "through the assistance of counsel, [it] sought a discussion regarding its revised estimate and additional living expenses so that Meridian could fully understand the differences and resolve disputed issues[,]" but that Patton never responded and instead filed his Original Petition on June 10, 2021. Brief in Support of Motion at 10.

Patton has failed to present evidence creating a genuine issue of material fact on this claim. Therefore, summary judgment is **GRANTED** on Patton's claim for violation of § 541.060(a)(4) of the Texas Insurance Code.

Section 541.060(a)(7) of the Texas Insurance Code makes it "an unfair method of competition or an unfair or deceptive act or practice" to "refus[e] to pay a claim without conducting a reasonable investigation with respect to the claim[.]" TEX. INS. CODE § 541.060(a)(7). Patton argues that Meridian "partially denied the claim absent a reasonable investigation." Brief in Support of Response at 6. Additionally, Patton asserts "[a]fter receiving Plaintiff's pre-suit notice for over $300,000 and revised estimate, Heath failed to examine the estimate or meet with

- 41 -

Plaintiff's contractor to explore the differences, this is evidence of an unreasonable investigation similar to *Nicolau*." *Id.* at 16; see also *Nicolau*, 951 S.W.2d, at 449. Patton further argues that "[w]hen presented with Plaintiff's signed Apartment Lease, [H]eath failed to call the National to explore the difference between it and the house he found for $11,585. Perhaps the National would have agreed to something between $16,000 and $11,585 if Heath made a lump sum payment. Brian Heath was determined to deny the additional living expenses claim and only paid after a lawsuit was filed." *Id.* The evidence does not support Patton's assertions.

The evidence shows that, after the original estimate and payment, Meridian continued to engage in a dialogue with Patton and took steps consistent with a reasonable investigation of the claim. *See* Appendix to Motion at Appendix 000021 (Heath's notes reflecting communications with Patton about the claim saying "we can always discuss" and "we will try our best to resolve any differences with [Patton] and his repairer"), Appendix to Motion at Appendix 000074-76 (list of payments made to Patton under various Policy provisions from March 12, 2021 to August 4, 2021), Appendix 000144-146 (Heath's notes reflecting decision to hire ITEL to examine wood flooring so any necessary adjustments to original estimate can be made), Appendix 000228-229 (ITEL report evaluating wood floors), Appendix 000273-305 (revised estimate). The court agrees that "Meridian's many communications with Plaintiff as well as its original and revised estimates provided a high level of detail

with respect to Plaintiff's claimed damages and living expenses." Brief in Support of Motion at 16. "[An insurance company's] decision to consult with additional experts before making a final coverage decision speaks to the thoroughness of its investigation." *Tri Investments, Inc.*, 553 F. Supp. 3d at 410 (citing *Weiser-Brown Operating Company v. St. Paul Surplus Lines Insurance Company*, 801 F.3d 512, 526-27 (5th Cir. 2015) (noting that the insurer's retention of an expert "to take a second look [at coverage decision] . . . demonstrates an effort on [the insurer's] part to obtain an expert opinion on a complicated coverage issue")). Meridian engaged additional experts, like ITEL, during the adjustment process, and this speaks to the reasonableness and thoroughness of their investigation of Patton's claim.

Further, Patton's argument that Meridian did not conduct a reasonable investigation as to "additional living expense" coverage is unsupported by the evidence. Upon review of Housing Headquarters reports, Meridian determined that an appropriate amount representing "necessary increase[s] in living expenses" covered under the Policy's provision for "additional living expense[s]" included $21,000 for an estimated three months rent plus an additional payment of $14,000 and paid Patton this amount on April 1, 2021. Brief in Support of Motion at 9; Appendix to Response at APP 0050. Simply because Patton disagrees with the amount allocated as an additional living expense does not mean that Meridian failed to reasonably investigate appropriate rental properties and determining appropriate compensation

under the Policy's "additional living expense" coverage.  *See* TEX. INS. CODE § 541.051.

The evidence supports that Meridian conducted a reasonable and thorough investigation of Patton's claim.  Patton has failed to present evidence that Meridian refused to pay Patton's claim without conducting a reasonable investigation. Therefore, summary judgment is **GRANTED** on Patton's claim for violation of § 541.060(a)(7) of the Texas Insurance Code.

### iii.      *Texas Prompt Payment of Claims Act*

Patton contends that Meridian violated the Texas Prompt Payment of Claims Act ("TPPCA"), codified under chapter 542, subchapter B, of the Texas Insurance Code.  The TPPCA provides that an insurer, who is "liable for a claim under an insurance policy" and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for "interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees." TEX. INS. CODE § 542.060(a).  The Texas Legislature advises courts that these provisions should be "liberally construed to promote the prompt payment of insurance claims." *Id.* § 542.054.

Within 15 days of receiving notice of a claim, an insurer must acknowledge receipt of the claim, begin an investigation, and request from the claimant "all items,

statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." *Id.* § 542.055(a).  An insurer must then inform the claimant within 15 business days after receiving "all items, statements, and forms required by the insurer to secure final proof of loss" whether it accepts or rejects the claim.  *Id.* § 542.056(a).  If the insurer approves all or part of a claim, an insurer must pay the claim no later than 5 business days after notifying the claimant.  *Id.* § 542.057(a).  To enforce these deadlines, the TPPCA provides that a claimant may recover statutory interest and attorney's fees, in addition to the amount of the claim, when an insurer violates the statute:

> [I]f an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

*Id.* § 542.058(a).

Section 542.060(a), in turn, provides that interest accrues at 18% per year and assesses attorney's fees against a liable insurance company:

> [I]f an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy . . . , in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.

*Id.* § 542.060(a).

- 45 -

"To recover a statutory penalty under [the TPPCA], an insured must establish: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to comply with one of the requirements of [the statute] with respect to the claim." *Evergreen National Indemnity Company v. Tan It All, Inc.*, 111 S.W.3d 669, 678 (Tex. App.--Austin 2003, no pet.).

Patton contends that Meridian "breached § 542.056 and the policy when it failed to explain the reasons for the rejection of Plaintiff's claims in writing." Brief in Support of Response at 19. Meridian moves for summary judgment on this claim on the grounds that "Meridian's prompt and thorough acknowledgement, investigation, explanations, and determination of Plaintiff's claim as described above complied with Texas Insurance Code § 542." Brief in Support of Motion at 20. Further, Meridian argues that "Plaintiff's arguments Meridian failed to explain the rejection of his claim in writing [] is non-sensical. Meridian did not deny the claim. Meridian's investigation continued after Plaintiff sued Meridian. There is no evidence Meridian received all items, statements and forms it required to issue payment for the total sum claimed by Plaintiff, in excess of $400,000 []. These are all conclusory statements without any supporting evidence." Reply at 6 (internal citations omitted).

Section 542.056 of the Texas Insurance Code requires an insurer to inform the claimant within 15 business days after receiving "all items, statements, and forms required by the insurer to secure final proof of loss" whether it accepts or rejects the

claim.  TEX. INS. CODE § 542.056(a).  Further, if the insurer rejects the claim, the

insurer must state the reasons for rejection.  *Id.* § 542.056(c).  Finally, "[i]f the

insurer is unable to accept or reject the claim within the period specified by

Subsection (a) or (b), the insurer, within that same period, shall notify the claimant

of the reasons that the insurer needs additional time.  The insurer shall accept or

reject the claim not later than the 45th day after the date the insurer notifies a

claimant under this subsection."  *Id.* § 542.056(d).

The evidence supports the following timeline of events in this case.  Meridian

was notified of the insurance claim on February 17, 2021.  Appendix to Motion at

Appendix 000022-24, Appendix 000199.  The following day, on February 18, 2021,

Meridian communicated with Patton about his claim so that it could commence its

investigation.  *Id.* at Appendix 000022-24.  Meridian timely acknowledged Patton's

claim in writing by letter dated February 22, 2021.  *Id.* at Appendix 000334.

Meridian then commenced its investigation of the claim on February 23, 2021, by

requesting an inspection of the Property.  *Id.* at Appendix 000022-24.  The scheduled

inspection took place on February 27, 2021.  *Id.* at Appendix 000199-201.  Following

the inspection, Meridian prepared its initial estimate dated March 6, 2021, and

submitted this estimate to Patton on March 7, 2021.  *Id.* at Appendix 000022,

Appendix 000199-201.  The estimate provided line-by-line details of the specific

costs of repairs covered by the Policy and explained to Patton its determinations.  *Id.*

- 47 -

at Appendix 000202-224.  On March 12, 2021, Meridian issued $56,759.36 to

Patton for covered repairs.  *Id.* at Appendix 000074.  Then, Meridian employed ITEL

on March 29, 2021, to test the wood floors at the Property.  *Id.* at Appendix 000144-

146, Appendix 000228-229.  When ITEL confirmed that the wood was not pre-

finished as Meridian initially thought, Meridian revised its estimate accordingly.  *Id.*

at Appendix 000228-229, Appendix 000273-305.  Meridian subsequently provided a

revised estimate, dated June 4, 2021, with a cost of repair calculated as $118,154.47

with an actual cash value settlement for the damaged property of $105,158.48 after

considering depreciation, deductible amount, and prior payments.  *Id.* at Appendix

000274.  Meridian also contends that, "through the assistance of counsel, [it] sought

a discussion regarding its revised estimate and additional living expenses so that

Meridian could fully understand the differences and resolve disputed issues[,]" but

that Patton allegedly never responded and instead filed his Original Petition on June

10, 2021.  Brief in Support of Motion at 10; Appendix to Motion at Appendix

000006.  Meridian asserts that it asked Patton "to submit a supplemental contents

list as Meridian issued two separate payments on June 23, 2021 to [Patton] in the

amounts of $11,913.17 and $48,399.12[]" and that "[a]dditional payment(s)

followed but the litigation continues."  Brief in Support of Motion at 10; Appendix to

Motion at Appendix 000006, 000075.  Patton produced a revised estimate of his

own, dated September 21, 2021, totaling $152,378.05.  Appendix to Motion at

Appendix 000307-333.  Patton asserts that he "has spent $339,549 on dwelling repairs and Defendant paid $56,759.36 and closed the claim."  Brief in Support of Response at 8.  Meridian contends that "[a]s of June 23, 2021, Meridian submitted payments to Plaintiff amounting to a total of $152,071.65[]" and that "[a]dditional payment was made recently."  Brief in Support of Motion at 10-11 (internal citations omitted); Appendix to Motion at Appendix 000074-76.

The evidence supports that Meridian did not deny Patton's claim as Patton contends.  Rather, Meridian accepted the claim and paid Patton the amount for which it believed was rightfully covered and owed under the Policy.  There is an ongoing dispute between the parties as to whether the amount paid was the amount owed under the Policy.  However, Meridian did not move for summary judgment on Patton's breach of contract claim, so the court cannot speak on whether the amount Meridian paid Patton is the total amount due under the Policy.  Patton's argument that "Defendant breached § 542.056 and the policy when it failed to explain the reasons for the rejection of Plaintiff's claims in writing[]" is unsupported by the evidence.  *See* Brief in Support of Response at 19.  First, Meridian did not reject Patton's claim.  Second, Meridian provided detailed estimates outlining the estimated value of necessary repairs throughout the Property.  *See* Appendix to Motion at Appendix 000202-224 (original estimate), Appendix 000273-305 (revised estimate).  These estimates are not rejections of the claim.  Meridian also inspected the Property

on February 27, 2021, and subsequently submitted its initial estimate to Patton on March 7, 2021—clearly within the required 15-day window provided under § 542.056(a)—acknowledging that Patton suffered a loss, expressing Meridian's acceptance of Patton's claim, and providing the amount estimated to be covered under the Policy at that time.  *See* TEX. INS. CODE § 542.056(a).  Even though Meridian ultimately sought and received new information relevant to adjustment of Patton's claim, and subsequently revised its estimate, it still satisfied the requirements of § 542.056(a) to accept the claim within 15 days after receiving "all items, statements, and forms required by the insurer to secure final proof of loss[]" because, within that timeframe, Meridian inspected the Property and determined that Patton suffered a loss covered by the Policy.  *Id.* § 542.056(a); see *Barbara Technologies Corporation v. State Farm Lloyds*, 589 S.W.3d 806, 816-17 (Tex. 2019) ("As such, the rejection or acceptance of a claim is the insurer's acknowledgment that it had all the information it needed from the claimant to determine *whether the claimant was entitled to benefits under the policy*.  Because an insurer's rejection of a claim is based on all information the insurer deemed necessary, as well as the insurer's investigation, later invocation of the policy's appraisal provision does not somehow start the investigatory period anew.") (emphasis added).

Therefore, summary judgment is **GRANTED** on Patton's claim for violation of § 542.056 of the Texas Insurance Code.

- 50 -

Patton also contends that Meridian violated §§ 542.058 and 542.060 of the TPPCA "because it failed to pay the $450,228 claim within 60 days from March 6, 2021, when it arguably had all items, statements, and forms required by the insurer to secure final proof of loss because the claim was closed." Brief in Support of Response at 19. Patton argues that "Defendant's motion admits that it has paid only $152,071 to date, thus $59,549 in penalty interest is owed on at least $298,157 in denied benefits. Penalty interest continues to accrue until Judgment is entered against Defendant." *Id.* at 20. Meridian's position is that "Meridian's prompt and thorough acknowledgement, investigation, explanations, and determination of Plaintiff's claim as described above complied with Texas Insurance Code § 542. Plaintiff is unable to present any evidence proving its allegations that Meridian committed any violations under Texas Insurance Code § 542." Brief in Support of Motion at 20.

The Supreme Court of Texas recently provided guidance in a case where the insured claimed that "[w]hile State Farm paid part of the claim 'not later than the fifth business day after the notice was made,' it did not pay the rest of the claim within the statutory time frame." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 655 (Tex. 2021). State Farm asserted "that it 'undisputably paid Hinojos's claim within 60 days after receiving all information required to evaluate the claim,' notwithstanding the fact that it later paid more on that claim after the appraisal." *Id.*

The Court, ultimately siding with the insured, explained that "[n]othing in Chapter 542 discharges prompt payment liability based on the partial payment of the amount that 'must be paid' under the policy." *Id.* at 656; *see* TEX. INS. CODE § 542.051(2). The Court specified that "[t]he phrase 'must be paid by the insurer' in the definition of 'claim' includes the amount of the claim and 'limits 'claim' to the amount ultimately determined to be owed, which of course would be net of any partial payments made prior to that determination.'" *Id.* at 657 (citing *Republic Underwriters Insurance Company v. Mex-Tex, Inc.*, 150 S.W.3d 423, 426 (Tex. 2004)) (interpreting the definition of "claim" in Chapter 542's substantively similar predecessor statute). Further, the Court advises that given the statute "expressly defines 'claim' to include the amount that 'must be paid by the insurer,' not the amount the insurer agrees to pay[,] [c]hapter 542's definition of claim, in the context of sections 542.058 and 542.060, comprises both liability for the loss *and* the amount owed for that loss." *Id.* (emphasis in original). "Chapter 542 does not provide that a partial payment of a valid claim discharges liability for statutory interest. Accordingly, we hold that an insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires." *Id.* at 658. Ultimately, the court remanded the case to the trial court where "[t]o prevail on his claim, Hinojos must establish: (1) the amount for which State Farm is contractually liable under the insurance policy; (2)

that State Farm failed to comply with statutory deadlines; and (3) statutory damages based on the amount contractually owed less the amounts paid within the statutory deadline." *Id.* at 658-59 (internal citation omitted).

In *Randel v. Travelers Lloyds of Texas Insurance Company*, the Fifth Circuit recently addressed the issue of whether, post-*Hinojos*, an insurer can be held liable under the TPPCA "for failing to timely pay the full damages it owed even though it timely made sizeable payments in response to the claim." 9 F.4th 264, 265 (5th Cir. 2021). The Court noted that, in *Hinojos*, the Supreme Court of Texas "held that 'a reasonable payment should roughly correspond to the amount owed on the claim.' *Hinojos*, 619 S.W.3d at 658. Because the insurer in *Hinojos* paid 'significantly less within the statutory deadline than the amount the appraisers ultimately determined that it owed on the claim'—the difference being $23,000, *id.* at 654—its payment was not timely. *Id.* at 657 n.34." *Id.* at 269. The Court ultimately determined that, "[Y]es. Payment and acceptance of an appraisal award means there is nothing left for a breach of contract claim seeking those same damages. But a plaintiff may still have a claim under the prompt payment law after it accepts an appraisal award. The Supreme Court of Texas recently held that even a preappraisal payment that seemed reasonable at the time does not bar a prompt-payment claim if it does not 'roughly correspond' to the amount ultimately owed." *Id.* at 265-66 (citing *Hinojos*, 619 S.W.3d at 658). Finally, the Court concluded "[t]oday we need not decide just how

close a preappraisal payment needs to be to 'roughly correspond' with the final amount owed.  There is a substantial gap of roughly $185,000 between the preappraisal dwelling and personal property payments and the appraisal award. That difference is much greater than the *Hinojos* underpayment." *Id.* at 269.

Given that Meridian did not move for summary judgment on Patton's breach of contract claim, the court does not yet know "the amount for which [Meridian] is contractually liable under the insurance policy."  See *Hinojos*, 619 S.W.3d at 658.  It is possible that the jury will find that Meridian breached the insurance contract by failing to pay more than what it has already paid.  Therefore, the amount that "must be paid by the insurer" has yet to be definitively determined and it remains unclear whether the amount already paid by Meridian would be deemed "reasonable" compared to the final "amount for which [Meridian] is contractually liable under the insurance policy."  See *id.* at 658; *Randel*, 9 F.4th at 265-66.  There was no appraisal in this case as there was in *Hinojos* or *Randel* that would allow the court to determine the reasonableness of a preappraisal payment versus a post-appraisal payment.

Thus, there remains a genuine issue of material fact that Meridian failed to timely pay the amount that "must be paid by the insurer."  For this reason, summary judgment is **DENIED** on Patton's claims that Meridian violated §§ 542.058 and 542.060 of the Texas Insurance Code.

- 54 -

D.     Common Law Duty of Good Faith and Fair Dealing

Patton also seeks relief under the common law.  To establish a cause of action for the breach of the common law duty of good faith and fair dealing against an insurer, the insured must prove the insurer denied or delayed payment of a claim and "the insurer knew or should have known that it was reasonably clear that the claim was covered."  *Giles*, 950 S.W.2d at 56.  "Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas."  See *Hall Arts Center Office, LLC v. Hanover Insurance Company*, 327 F. Supp. 3d 979, 999 (N.D. Tex. 2018) (Fitzwater, J.) (citing *Higginbotham*, 103 F.3d at 460).

Because the court has already determined that Patton has failed to establish bad faith as it relates to his Texas Insurance Code claims for "Failure to Settle" under § 541.060 (a)(2)(A) and "Failure to Conduct a Reasonable Investigation" under § 541.060(a)(7), the court hereby further finds that summary judgment should be granted as to Patton's claim for breach of the common law duty of good faith and fair dealing.  *Id.* at 1000 ("In this case, for the same reasons that Hall Arts's claim for breach of the duty of good faith and fair dealing fails, its § 541.060(a)(2)(A) and § 541.060(a)(7) claims fail as well."); *J.P. Columbus Warehousing, Inc*, 2021 WL 799321, at *11 ("Because the Court has determined that there is no genuine issue of material fact with respect to breach of the duty of good faith and fair dealing,

- 55 -

summary judgment is appropriate as to [plaintiff's § 541.060(a)(2)(A) and § 541.060(a)(7)] claims.").

Therefore, summary judgment is **GRANTED** on Patton's common law duty of good faith and fair dealing claim.

### E.    Express or Implied Warranty

Patton contends that "Meridian made the following express or implied warranties with respect to its products or services: that plumbing leaks and water damage claims will be paid in full minus the deductible and that claims will be processed promptly.  Plaintiff relied on Meridian's representations and they became part of the basis of the bargain.  Meridian breached the warranty because the products or services failed to provide results as advertised."  Plaintiff's Original Petition at 10.

Breach of warranty claims require the buyer to establish each of the following five elements:

> 1) an affirmation or promise made by the seller to the buyer; 2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer.

*Lindemann v. Eli Lilly and Company*, 816 F.2d 199, 202 (5th Cir. 1987); see also Tex. Bus. & Com. Code § 2.313.

As the Fifth Circuit explained in *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Insurance Company*, there is a difference "between promises which are merely terms of the contract and promises which rise to the level of warranties." 832 F.2d 1358, 1375 (5th Cir. 1987).  While a "contract term identifies what is being sold," "warranties describe attributes, suitability for a particular purpose, and ownership of what is sold."  *Lyda Constructors, Inc. v. Butler Manufacturing Company*, 103 S.W.3d 632, 637 (Tex. App.--San Antonio 2003, no pet.) (quoting *Chilton Insurance Company v. Pate & Pate Enterprises, Inc.*, 930 S.W.2d 877, 891 (Tex. App.-- San Antonio 1996, writ denied)).  As a result, this court adopts the position of the court in *Contractor's Source Inc. v. Hanes Companies, Inc.*:

> [W]here the non-conformity alleged relates to the specific obligations of the seller under the terms of the contractual agreement, the buyer's remedies fall primarily under a breach of contract claim.  If, however, the non-conformity arises solely from the seller's express or implied warranties outside of its contractual obligations, or from generally defective goods, the buyer's sole remedy is for breach of warranty.

No. CIV.A.09-CV-0069, 2009 WL 6443116, at *6 (S.D. Tex. Dec. 29, 2009).

Meridian moves for summary judgment on this claim, arguing that "Plaintiff misstates the terms of the policy, incorrectly stating Meridian warranted 'that plumbing leaks and water leaks will be paid in full minus the deductible and that claims would be processed promptly.'  Plaintiff also errs by claiming, without evidence, that 'products or services failed to provide results as advertised.'"  Brief in

- 57 -

Support of Motion at 20 (internal citations omitted).  The evidence supports

Meridian's position that "[t]he Policy does not state as Plaintiff described, and he has

not pointed to any language stating 'plumbing leaks and water leaks will be paid in

full minus the deductible.'"  See *id.*  Finally, Meridian asserts that "there is no

evidence Plaintiff's claim was not processed promptly.  Indeed, Plaintiff filed suit less

than four months after the claimed loss occurred, and the adjustment of the claim

was not complete at that time.  Plaintiff has also pointed to no evidence that he relied

on any such misrepresentations to his detriment."  *Id.*

 Texas courts treat the issue of whether a promise constitutes an express

warranty as a question of law.  See, e.g., *S.I. Property Owners' Association, Inc. v. Pabst

Corporation*, 714 S.W.2d 358, 361 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.)

(holding that representations did not rise to the level of a warranty); *Cravens v.

Skinner*, 626 S.W.2d 173, 176 (Tex. App.--Fort Worth 1981, no writ) (holding that a

promise to deliver an appraisal was not an express warranty).  "An express warranty is

entirely a matter of contract, wherein the seller may define or limit his obligation

respecting the subject of the sale, and provide as to the manner of fulfilling the

warranty or the measure of damages for its breach."  *Pabst Corporation*, 714 S.W.2d at

361 (quoting *Donelson v. Fairmont Foods Company*, 252 S.W.2d 796, 799 (Tex. Civ.

App.--Waco 1952, writ ref'd n.r.e.)).

The Policy does not provide as Patton alleges and Patton has failed to point to any language, written or spoken, which states that "plumbing and water leaks will be paid in full minus the deductible." *See* Plaintiff's Original Petition at 10.  Therefore, Patton has failed to satisfy the first required element that "an affirmation or promise [was] made by the seller to the buyer[.]"  See *Lindemann*, 816 F.2d at 202. Additionally, Patton argues that Meridian warranted that "claims will be processed promptly."  *See* Plaintiff's Original Petition at 10.  Patton has failed to present evidence that Meridian failed to process his claim promptly.  The timeline of events in this case does not show that Meridian failed to process Patton's claim promptly. Additionally, the court notes that Patton filed suit less than four months after the claimed loss—at a time where Meridian maintains it was still in the process of adjusting the claim.  *See* Brief in Support of Motion at 20-21.  Therefore, Patton has failed to satisfy the third necessary element: "that the goods failed to comply with the affirmation or promise."  See *Lindemann*, 816 F.2d at 202.  Patton also argues that "Defendant advertised that the policy had $182,070 for additional living expenses when in fact it was limited."  Brief in Support of Response at 20.  The evidence cited in support of this assertion is Patton's declaration where he states, "I was told the policy had $182,070 in loss of use benefits, but my claim for loss of use was denied until I hired an attorney."  Appendix to Response at APP 0130.  Patton also asserts that he "has incurred $110,679 in additional living expenses and has only received

- 59 -

$21,000.  These representations became part of the basis of the bargain.  Defendant

breached the warranty for services because it failed to procure insurance that covers

Plaintiff's property and for additional living expenses as described or promised."

Brief in Support of Response at 20-21.

There is a difference "between promises which are merely terms of the contract

and promises which rise to the level of warranties."  *Brooks, Tarlton, Gilbert, Douglas &*

*Kressler*, 832 F.2d at 1375.  While a "contract term identifies what is being sold,"

"warranties describe attributes, suitability for a particular purpose, and ownership of

what is sold."  *Lyda Constructors, Inc.*, 103 S.W.3d at 637.  The statement Patton

claims was made by a Meridian agent regarding loss of use benefits is merely a term

of the contract.  See *Brooks, Tarlton, Gilbert, Douglas & Kressler*, 832 F.2d at 1375.

The Policy provides for a coverage limit of $182,070 in loss of use benefits.

Appendix to Response at APP 0003.  That is a term of the contract rather than a

statement describing "attributes, suitability for a particular purpose, [or] ownership of

what is sold."  See *Lyda Constructors, Inc.*, 103 S.W.3d at 637.  The contention that

Meridian breached this condition of the contract "relates to the specific obligations of

the seller under the terms of the contractual agreement," therefore, "the buyer's

remedies fall primarily under a breach of contract claim."  *Contractor's Source*, 2009

WL 6443116 at *6.

Further, "while Texas has recognized the existence of an implied warranty that accompanies a contract for the repair or modification of goods or property," Patton has failed to clarify whether he is asserting a claim for breach of an implied warranty of merchantability, or a claim for breach of an implied warranty of fitness for a particular purpose. *See* TEX. BUS. & COM. CODE §§ 2.314-2.315. The Supreme Court of Texas has "clarified that public policy does not justify imposing an implied warranty for service transactions if there is no compelling need and other adequate remedies are available." *Howley v. Bankers Standard Insurance Company*, No. 3:19-CV-2477-L, 2020 WL 4731968, at *6 (N.D. Tex. Aug. 14, 2020) (Lindsay, J.) (citing *Shakeri v. ADT Security Services, Inc.*, 816 F.3d 283, 294 (5th Cir. 2016)), *aff'd*, No. 20-10940, 2022 WL 576403 (5th Cir. Feb. 25, 2022). Patton has failed to present evidence demonstrating a compelling need for the court to impose an implied warranty. See *Howley*, 2020 WL 4731968 at *6 (Where the plaintiff similarly asserted that the defendant in that case made "express or implied warranties" that "hail and windstorm claims will be paid in full," and "that claims will be processed promptly" and contended that he relied on the express or implied warranties because the representations "became part of the basis of the bargain[,]" the court granted the defendant's motion to dismiss as it related to claims for breach of express or implied warranty because the "Plaintiff's pleadings offer no clarity as to whether he is asserting a claim for breach of an implied warranty of merchantability, or a claim for

breach of an implied warranty of fitness for a particular purpose."). Patton fails to offer clarity as to what kind of implied warranty allegedly was made and breached. Thus, Patton has failed to demonstrate there is a genuine issue of material fact that Meridian breached an implied warranty.

Therefore, summary judgment is **GRANTED** on Patton's claim for breach of express or implied warranty.

### III.  CONCLUSION

For the reasons stated above, Meridian's motion for summary judgment is **GRANTED** on all of Patton's extra-contractual claims except his claim that Meridian violated §§ 542.058 and 542.060 of the Texas Insurance Code.

**SO ORDERED.**

July 28, 2022.

_A. Joe Fish_____
A. JOE FISH
Senior United States District Judge